[Civ. No. 25863.   Second Dist., Div. Three.   Sept. 13, 1962.]

JOHN MALDONADO, Plaintiff and Appellant, v. FRANK R. LINZA et al., Defendants and Respondents.

652

C. A. Falconer for Plaintiff and Appellant.

Philip Barnett for Defendants and Respondents.

FILES, J.—This is an action by a real estate broker against his client to recover a commission. Plaintiff is appealing from a judgment against him after a court trial. All of appellant's arguments are based upon the claimed insufficiency of the evidence to support the findings of the trial court. Appellant is here under a misconception of the function of an appellate court. He opens his argument with this statement (without citation of authority) : "If, upon a review of all the evidence, the reviewing court is left with a definite conviction that, although there is evidence to support each of the Findings, a mistake has been made, the reviewing court must reverse."

■■ Perhaps no statement of law has appeared more frequently in the reports than the rule which governs this appeal: "When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. [Citation.]

■ "When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court." (*Grainger* v. *Antoyan,* 48 Cal.2d 805, 807 [313 P.2d 848].)

■ Despite the misdirection of counsel's argument this court has, in view of counsel's strenuous insistence that the decision is unjust, examined the record and has determined that there is substantial evidence which supports the findings and judgment.

Defendants are three partners who owned an apartment house. Under date of July 20, 1959, they gave plaintiff a six months' exclusive listing to sell the property for a price of $95,500. As set forth in the written listing contract, the terms of the sale were: "Down payment *$17,500.00 plus new maximum loan.* . . . Will take 2nd T.D. *Yes.* $ *submit* Mo. @ *6.6%.*" The property was at that time encumbered by a $51,000 first trust deed and a $9,000 second.

On October 20, 1959, plaintiff produced an offer made by Mr. and Mrs. Valov, which involved an exchange. Defendants considered this offer and rejected it.

On October 21, 1959, there was a discussion between plain-

tiff and defendants which resulted in a definite oral agreement as to the terms which defendants would accept. The trial court found (and this finding is not attacked) that from October 21 on, the listing terms were as follows: Cash, $17,500; new first trust deed loan for the minimum amount of $60,000 (this being the amount necessary to pay off existing encumbrances); a second trust deed back to the sellers for the balance, bearing 6.6 per cent interest, monthly payments, including interest, to be 1 per cent of the face value.

On October 26, 1959, the Valovs signed a new deposit receipt whereby they offered to purchase the property for $95,500 on the following terms: $17,500 cash plus a new maximum loan of $60,000 plus a second trust deed for $18,000. Later that day plaintiff's salesman saw one of the defendants in passing and told him, "We met the listing terms and we are going to escrow." He "flashed" the deposit receipt but the defendant did not read it. This receipt was never submitted to any of the three defendant partners for signature.

On October 27 an escrow was opened. Instructions were prepared under plaintiff's directions and signed by the Valovs. The buyers' portion of the instructions defined the terms of purchase as follows:

"I will hand you $300.00 herewith and will hand you the sum of $17,200.00 upon your demand prior to the close of escrow and will obtain and qualify for a maximum loan or for $60,000.00 and will execute a second trust deed for the difference or for $18,000.00 to complete a total consideration of $95,500.00. . . .

"It is mutually understood that buyers are to qualify for and obtain a maximum loan or for $60,000.00 with approximate terms of $548.00 with interest rate not to exceed 7.2."

Defendants refused to join in this escrow. Shortly thereafter plaintiff sold the Valovs another property. This action was commenced December 16, 1959. The complaint alleged that plaintiff had found purchasers, the Valovs, who were ready, willing and able to purchase upon the terms specified by defendants in their listing. The trial court found that the Valovs were not willing to purchase on the listing terms in this: that the listing required a *minimum* new loan of $60.000, while the Valovs offered to obtain a *maximum* of $60,000, which might be anything less than the $60,000 required by the sellers to pay off their existing encumbrances.

If the deposit receipt, with the phrase "new maximum loan

of $60,000'' is ambiguous, the escrow instructions are not. As spelled out in the escrow, the promise of the Valovs was to perform one of two alternatives: obtain and qualify for a maximum loan, or obtain and qualify for a $60,000 loan. Where an obligation requires the performance of one of two acts, in the alternative, the party required to perform has the right of selection. (Civ. Code, § 1448.) Thus under the terms of their offer, if the Valovs had been unable to qualify for and obtain a new $60,000 loan they would not be in default if they obtained a loan for the maximum amount for which they could qualify. Under the terms of the Valov offer, if the maximum loan obtainable turned out to be less than $60,000, the new loan would not be sufficient to discharge the existing first and second encumbrances. The sellers would be obliged to use their money (or the down payment) to clear the title, and would be required to hold a larger second trust deed note for the difference. This is substantially different from what the listing contemplated.

This discrepancy between the listing and the escrow terms could not have been inadvertent. Plaintiff was well aware that it was important to the buyer not to commit himself to obtain a loan which might not be obtainable. There was no loan commitment at the time the Valovs made their offer. When plaintiff testified at the trial he was asked what figures were mentioned in discussion with defendants as a possible maximum loan. His answer was: "51,000, 55,000, 60,000 which in my opinion was the highest we'd be able to obtain."

It is immaterial now that early in December 1959 a loan broker made a "loan commitment" to plaintiff to loan $60,000 on this property. The Valovs never offered unconditionally to obtain a $60,000 loan. If plaintiff had succeeded in persuading the Valovs to accept the loan broker's assurance that $60,000 was available, and had persuaded the Valovs to make an unconditional promise of their own to obtain such a loan, plaintiff could have earned a commission before the listing expired. This was never done.

Plaintiff also argues that further performance by plaintiff was excused because defendants repudiated their contract, and that the trial court should have so found. Counsel has not referred to any page in the record as a basis for this contention. We have read the record. The complaint does not allege that defendants repudiated their contract with plaintiff or otherwise prevented plaintiff from performing. The pretrial statement did not indicate that repudiation was

an issue. There was no evidence that defendants ever declared that they would not sell to a buyer who met the listing terms.

A separate appeal may not be taken from the order denying a new trial. The purported appeal therefrom is dismissed.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.